# AFFIDAVIT OF JAMES MASON BUMP

**STATE OF NEBRASKA** : 
: SS
**COUNTY OF DOUGLAS** :

I, JAMES MASON BUMP, being duly sworn, depose and say under oath:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Affidavit. The evidence set forth in the foregoing Affidavit is based upon my personal knowledge. If called upon to do so, I could and would competently testify to the following facts:

2. I am a business and technology consultant with Blockchain Expert Consulting, Inc., a New York Corporation authorized to do business in Nebraska which offers blockchain forensic investigative services to private and government parties.

3. I have been retained by counsel for Plaintiff Gerald Knoll in the civil action *Knoll v. Doe at al.*, Case No. 1:24-cv-05414, currently pending in the Northern District of Illinois.

4. I submit this affidavit in support of Plaintiff's Motion for Alternate Service on Defendants Elaine Doe, John Doe and John Does II-XX.

5. I am also an attorney licensed to practice law in state and appellate courts in Iowa.

6. I hold a J.D. from Drake University Law School, an M.B.A. from Drake University, and a Bachelor of Science from Iowa State University.

7. I am competent to testify on matters involving blockchain technology by virtue of my education, training and experience:

    a. I am the principal of Blockchain Expert Consulting (BEC), as described above;

    b. In my capacity with BEC, I have previously provided sworn testimony in federal court via affidavit, specifically with respect to forensic analysis establishing the factual basis for an action involving conversion of cryptocurrency and subsequent

fraudulent conveyances, as well as showing the mechanics and reliability of service by NFT. My testimony has also served as the foundation for a federal court granting a temporary restraining order and preliminary injunction against defendants and a relief party in a case involving cryptocurrency-related (see *Hoop v. Doe*, Case No. 4:23-cv-00185-SMR-HCA (S.D. Iowa).

c. I am also the co-founder and Chief Technology Officer at Blockserve[1], an Iowa-based software startup which offers code and software tools to private and public parties to serve defendants via alternative service of process (i.e. on blockchains via non-fungible tokens) and to institutions who need on-chain proof of compliance with Anti-Money Laundering (AML) and Know Your Customer (KYC) regulations.

d. Most recently, and concurrent with my work at BEC, I served as Protocol Counsel at Ai Layer Labs, a Delaware-based technology startup seeking to optimize decentralized computer processors (GPUs) to scale artificial intelligence networks. This work drew upon my experience with specialized blockchain networks and their native tokens.

---

[1] In candor to the Court and in the spirit of full disclosure, as stated in my prior affidavit (filed as an exhibit to Plaintiff's Verified Complaint), Blockserve is a for-profit company which affiant co-owns and operates with counsel for Plaintiff, Mr. Casey. Blockserve was born out of the work Mr. Casey has helped advance in federal courts, namely the digital service of legal process on defendants who hide behind blockchain technology. Blockserve merely commercialized that technology by borrowing from Mr. Casey a smart contract which Mr. Casey developed for use in a prior civil action. Blockserve has no financial interest in this litigation or my testimony. Moreover, neither Plaintiff nor any of Mr. Casey's clients are or have been customers of Blockserve. I consult and testify as an expert witness exclusively in connection my New York consulting entity, Blockchain Expert Consulting (BEC) and not in any connection with Blockserve.

e. I am also a former Protocol Specialist for Figment Inc., the world's leading back-end infrastructure provider for proof-of-stake blockchains. Figment is remarkable in the tech world for its status as a "Unicorn" staking firm with a valuation in excess of $1 billion. My work for Figment required me to master knowledge of multiple blockchains as well as the mechanics and economics of blockchain tokens.

f. My testimony in this matter is not associated with Blockserve, Figment, or Ai Layer Labs in any way.

g. I am a published author on the use of blockchain smart contracts in the legal field, including in the Iowa State Bar Association magazine.

h. I recently served as a featured, in-person speaker on the use of smart contracts at a major international blockchain technology conference, specifically Europe's Nebular Summit in Paris, France in July 2023. I have also spoken at other overseas industry conventions.

i. The knowledge base from which I draw for my work at BEC, in addition to my self-taught methods since 2015, consists of both training and experience. With regard to the former, I am certified by the Blockchain Council as a Blockchain and Law Professional (Credential ID 74682613), and also hold a Certified Blockchain Expert (Credential ID 74679687) credential from the same institution. Blockchain Council is an educational institute which certifies the skills and knowledge of persons who complete its courses and achieve passing scores on its written examinations.

j. With regard to my training, I have completed licensing training and education as a Certified Cryptocurrency Forensic Investigator, a common credential among law

3

enforcement which has been hailed by government authorities as "the first and only professional board certification program focused on cryptocurrency investigation throughout the world."[2] The program is administered by the McAfee Institute and my Credential ID is 23BN-QKW7-JHPJ.

8. I am an experienced user of investigative tools used to track and trace the movement of cryptocurrency through blockchains.

9. I am familiar with Plaintiff's Verified Complaint and have reviewed Plaintiff's Motion for Alternative Service and accompanying Brief, as well as exhibits thereto.

10. I have reviewed the smart contract by which Plaintiff has proposed serving Defendants on the Polygon blockchain, namely 0x836F90A570078093d47Caf154ceE9EE5cF4A4fF4.

11. I have also reviewed the sample service token and hyperlinks minted by Plaintiff's counsel to test Plaintiff's proposed method of service, and I have determined that the proposed method of service is a legitimate, reliable, and functional ERC-721 smart contract capable of deployment to Polygon, which can easily be used to send legal process documents to any Polygon address via a NFT deposited into the recipient's wallet.

12. Based on the Defendants' visible blockchain activity, it is my judgment that such service is highly likely provide actual notice to Defendants. This is supported by the reliability of the technology, the ease of viewing the Service NFT, and the fact that the Defendants used the wallets shortly before Plaintiff initiated this action.

---

[2] https://niccs.cisa.gov/education-training/catalog/mcafee-institute/certified- cryptocurrency-forensic-investigator-ccfi.

13. I have reviewed Plaintiff's Verified Complaint and exhibits thereto, and independently determined to a reasonable degree of certainty in my field as a blockchain professional that:

   a. The transactions which Plaintiff alleges constitute tortious and other wrongful conduct are visible and fully traceable on the Ethereum and Bitcoin blockchains to the point of their final transfer to exchanges, including Crypto.com and Binance. It is my opinion, held to a reasonable degree of forensic certainty in my field as a blockchain professional that defendants stole or otherwise defrauded Plaintiff of his cryptocurrency by means of the methods described in the Complaint. The transactions which Plaintiff alleges constitute tortious and other wrongful conduct involve the Defendants' receipt of the USDT (Tether);

   b. Using forensic tools, including public blockchain records, I traced Plaintiff's cryptocurrency to multiple cryptocurrency addresses, and identified that those funds were then shuffled through other addresses, as explained in Plaintiff's Complaint;

   c. The addresses on the Ethereum blockchain addresses identified by Plaintiff in his Complaint are the addresses owned or controlled by Defendants Elaine Doe and John Does I-XX to perpetuate the harms to Plaintiff;

   d. The transactions identified by Plaintiff in his Verified Complaint are public and traceable on the Ethereum blockchain and did in-fact result in the transfer of Plaintiff's cryptocurrency from his own exchange accounts to the Defendant's Ethereum addresses at various exchanges.

   e. The Defendants' known addresses, including the proposed Service Address (0xa97b6e171c0ac20E4914855572B00F7D3F00153b) are highly likely to be

actively and presently used by Defendants either on the blockchain and/or remain connected to the Defendant's preferred blockchain wallets and exchange accounts;

    f. Defendants, therefore, can be reasonably expected to be reliably contacted via any of the addresses used in the alleged scheme, whether on Ethereum or its popular and common sidechain, Polygon (which uses MATIC), as any Defendant using Ethereum addresses have the technical means to see each of his NFTs at their Ethereum (or identical) Polygon addresses.; and

    g. Sophisticated users of Ethereum addresses and cryptocurrency, such as Defendants, will be as familiar with Polygon as they are with Ethereum and Bitcoin.

14. Since the filing of Plaintiff's Verified Complaint, using open-source tools available to me, I have searched using all open-source methods available to me all methods of contact for Defendants but been unable to secure any viable contact information other than their cryptocurrency addresses. Relying on my experience tracking the Plaintiff's stolen cryptocurrency; discussions with Plaintiff's counsel the content of communications of Plaintiff's communications with Defendant; and my experience in evaluating the nature and redressability of pig-butchering scams, including other cases in present litigation involving the ZaifINT website, it is my professional judgment that:

    a. the Defendants are likely Philippine nationals who are impersonating a Japanese citizen and a Japanese cryptocurrency exchange, Zaif (whose legitimate website is Zaif.jp, not the Zaifint.com website given by the Defendants to Plaintiff). I believe

that the Zaif application used by Plaintiff is part of the Defendants' scheme and not a legitimate arm of the legitimate Zaif exchange.[3]

b. It is common in pig-butchering scams for a scammer to pose as a woman from one country, state that she is working on a second country, and actually be conducting the scam from a third country. As I understand it, Elaine Doe stated that she was from Japan but working in the United States, while upon information and belief, I have concluded that Elaine Doe and John Does II-XX are likely Philippine nationals.

c. Additional time to locate Defendants' information needed for personal service is not likely to be successful. I believe the phone number used by Defendants is likely associated with an untraceable or unlikely-to-be-traceable Voice Over Internet Protocol (VOIP) number, which does not typically require the user to provide the same identity and payment information as a cellular carrier service phone. Furthermore, Defendants communicated with Plaintiff through WhatsApp and Telegram, two encrypted messaging services commonly used by foreign nationals who perpetrate pig-butchering scams against Americans because they (1) require minimal information to open an account, and do not typically require identity verification; (2) store very little information about their users; and (3) have sophisticated in-app translation features that allow a scammer to perpetrate a scam

---

[3] In further candor and disclosure to the Court, I testified via affidavit in a related case currently pending in the Northern District of Iowa (Bullock v. Doe), that I believed that certain defendants associated with the ZaifINT scam were Turkish nationals. Having discussed with Plaintiff's counsel the discovery obtained in that matter (wherein the Bullock Plaintiff was represented by Mr. Casey), I have since concluded that the ZaifINT scam has ties to both China and the Philippines, and that the latter is the most likely to be the location of the Defendants.

without even being proficient in the victim's language. I believe that additional time investigating Defendants' identities via the phone number associated with the WhatsApp or Telegram accounts would not be fruitful – or timely – for purposes of effectuating service of process.

    d. I have worked with Plaintiff's counsel to scour internet search engines, reverse phone number systems, public listings, and blockchain records to attempt to identify the Defendants in this case. Given the limited information available to them, Plaintiffs have, in good faith, exhausted reasonable efforts to locate Defendants.

15. As such, Plaintiffs could not have served his Combined Motions for Alternative Service and Early Discovery prior to serving them by NFT. To the best of my knowledge, Plaintiff has made no prior application for similar relief in this case. This statement is intended to comply with Local Rule 5.5(d).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

**EXECUTED:**

BY: _____
J. Mason Bump

Subscribed, sworn and acknowledged before me by J. Mason Bump on this 16 day of September 2024.

_____
Notary Public

GENERAL NOTARY - State of Nebraska
ANEESH BHATTARAI
My Comm. Exp. February 21, 2027

9